315-0149 Robert Leakes-Scroggins, Apple Leafs-Cross Apparel by John Ridge v. Route 50 Auto Sales at All, Apparel by Cross Apple Leafs, Brian Hyatt May it please the court, counsel. The basis of the appellant's appeal is that the trial judge erred in sua sponte, awarding punitive damages in this case. Punitive damages were not prayed for by the plaintiff. Punitive damages were not argued by the plaintiff. The award of punitive damages in this case was done at the trial court's brain child, it was the trial court's sole action. And because the plaintiff never requested these damages, we believe that the award was an abuse of discretion and should be reversed. Alternatively, if the panel concludes that the punitive damages award was proper, that the trial court could have awarded these damages, the amount was excessive. This was a 15-to-1 ratio. The compensatory award was $1,000. The trial judge awarded $15,000. And we believe that under the constitutional analysis that was elaborated upon in our brief, that that is well in excess of the ratio that is considered to be a guidepost under the jurisprudence of the U.S. Supreme Court. But with regard to the common law analysis, there was no evidence in this case as to the financial status of the defendant. And again, that comes back to the issue of whether the defendant was placed on notice that punitive damages were being sought. Really, the thrust of our appeal and the essence of our position is that these were never asked for. And the cases throughout the state are pretty clear and pretty uniform that the plaintiff has to ask for them. Now, granted, there are some cases that predate the change in the Code of Civil Procedure with regard to personal injury cases. And under current law, for a personal injury case, you can't ask for punitive damages. You have to get leave in order to do that. But this isn't a personal injury case. This is a case that the plaintiff, the facts of which would have justified the plaintiff's request of punitive damages, and the plaintiff did not ask for them. Among the cases that were cited by the Apollo, the most compelling case in our view is the X. Rel. Scott case. That was a case in which the Attorney General, as plaintiff, filed a complaint seeking injunctive relief and an accounting. No prayer for punitive damages, no notice as to punitive damages, and in that case the trial court made a sua sponte award of punitive damages. The appellate court, to paraphrase the language of the court, it said these were not prayed for, the defendants had no notice that these were being requested, and the appellate court reversed the award of punitive damages. But the other cases that were cited, Young v. Hamill, Yates v. Brock, these were personal injury cases, a little bit older, and these were cases both of which the plaintiff at the jury instruction conference came in and said, oh, by the way, I'd like to submit an instruction as to punitive damages. So they're a little different factually. However, all of these cases come down to the same thing, and really that relates to the exceptional nature of punitive damages. It's very clear, not just in Illinois but in other jurisdictions, punitive damages are exceptional. These are not favored damages under the law, and there's a very strong preference that a defendant be placed on notice that these damages are in play. That's the name of the case that escapes me, I'm sorry. It's cited in my brief. But because of the exceptional nature of these damages, relating back to at least the last 50 years of Illinois jurisprudence, case after case says the plaintiff or the defendant is entitled to know that these damages are being sought. Now in this case, the plaintiff's complaint in its prayer said, and I'll paraphrase, because of these injuries, the plaintiff has been greatly injured in his reputation. His damages are in the amount of $40,000. He didn't say that he was seeking compensatory damages, but the context of the prayer for relief indicates that that was what he was requesting, and there certainly was no specific request for punitive damages. Then if the court will look to the record at closing argument, the plaintiff's initial closing argument, he specifically used the word compensate. He had asked for $40,000 in his complaint, and at that point in the case he believed that it was probably an insufficient amount to compensate him for his damages. No reference to punitive damages at all. The plaintiff never asked for them. And it's clear here that from the defendant's side, because this case covered both a defamation count as well as a count to set aside deeds, but with regard to the defamation case, the defense took the position that there was going to be a finding of defamation, and it was defamation per se because of the nature of the statement. So damages are going to be presumed. The issue is to what extent has the plaintiff proved them, and we took a position that focused on the incredibility of the plaintiff, his failure to prove just how he had suffered in his reputation, his economic status, his employment status. I believe there was evidence that he was receiving Social Security benefits, and the focus was if your reputation was damaged, then how have you proven that this has affected you? Have you been unable to get a job because a potential employer drove by and saw the sign? Have you lost out on other economic opportunities because people see the sign and think that you're a liar and a thief and a sex offender? That was our focus, and that was our focus because we never thought punitive damages were at issue. If punitive damages are at issue, then that changes everything, as this Court has noted. And in fact, it's important for the trial court to allow discovery. If punitive damages are on the horizon, then both sides are entitled to engage in discovery to develop that issue. What's the financial worth of the defendant? If punitive damages are going to be awarded, then what kind of award are we talking? What is the right number that the defendant can afford, but that isn't too much to be out of line so as to violate constitutional issues? So this is an issue that should have been dealt with before the case got to trial and discovery, and it wasn't because it wasn't asked for. So we believe that no matter what the trial court's intentions were, and it's clear from her decision that the trial judge was bothered by the sign and felt that given the familial relationship between the plaintiff and the defendant, that this was a particularly hateful and hurtful thing to say, and that motivated the punitive damages award. But it comes down to the issue that these weren't asked for, and Illinois law is clear that in order to recover punitive damages, a plaintiff must ask for them in his complaint, and he didn't. With regard to the cross-appeal, I honestly don't have a lot to say, and I think I made that clear in my brief. You have never seen, one has never seen a more credibility-intensive decision than this one. This was a case with just an unusual assortment of witnesses, and it was perhaps unintentionally exacerbated by the trial court when the defendant asked to subpoena an additional witness because of the recesses of the hearing and the spacing of the case in between court dates. We became aware that allegedly the plaintiff had spoken to someone and made admissions that the allegations in this complaint were false, so we wanted Lee to subpoena that witness, and the floodgates opened, and we ended up having another two days of hearing in which additional witnesses were called. The trial court in her decision, one of the first things she said was that she found credibility issues with regard to everyone. So it's almost impossible for this court on review, given the standard of review, to find that the trial judge erred in her decision with regard to count two. She found that the plaintiff had improved his case. That case from the very beginning was an allegation, a rather fantastic allegation, that Mr. Scroggins, the defendant, had pointed a gun at the plaintiff's head and forced him under duress to sign deeds to the property. The trial court didn't believe the allegations, didn't find that the case had been proven. Now, the cross appellate has made a number of arguments with regard to his ability to, or his requests to amend the complaint at the close of the evidence, and I really don't have anything more to say about that either. I think it's clear the trial court made the correct decision and that the request was procedurally very improper. So coming down to the original count, based upon duress, the trial court made a finding based upon the credibility of the witnesses, and there is no reason why that finding should be set aside. So the trial court's decision in that regard should be affirmed. The trial court's decision with regard to the compensatory damages on the defamation count should also be affirmed. There really is no argument from the appellee in that regard, the plaintiff. His argument focuses on the propriety of the punitive damages. The compensatory award, even as a nominal award, was correctly based upon the evidence. So for all the need to prove the compensatory damages, if these are awarded as part of a defamation per se argument, what proofs need to be found to determine what the damages might be? Because of the per se nature of the defamation, there is a presumption of damages, but the case law still provides that even in determining whether to presume nominal damages or to award nominal damages or to award something more, there has to be a relationship between the damages and the evidence as to the loss of reputation. Is that even an issue in this appeal? The amount of the compensatory award? It's not an issue from our standpoint. We only appeal the punitive and the cross appeal doesn't raise it, so I don't believe so. Punitive damages require proof of willful and wanton malicious intent? I believe that they should, but I believe that that would be a necessary finding, yes. Did the judge make a finding that this was willful and malicious? Her language says intentionally, but that is different from willfully and maliciously. Her findings that this was a hateful and hurtful and terrible thing to say would, I think, equate to a finding of maliciousness, to answer your question. I don't have anything further unless there are additional questions from the panel. Thank you very much. Mr. Ridge. Your Honors, Jenna Ridge for Robert Lee Scroggins, Mr. Hyatt. I'm going to take this in the order Mr. Hyatt opened up in. Basically, Your Honors, you have 5-2604, the Civil Practice Act, which says except in cases of default, a prayer for relief does not limit the relief obtainable. Judge, we asked for $40,000 in punitive damages, and having sat through this case and put it on, we should have amended it to something in excess of $400,000. What does your complaint say about punitive damages? It doesn't, Your Honor. We said we would damage at least $40,000, and basically, in evidence, is the sign this father put up at his used car lot, accusing his son of being a sex offender and a thief, and you should avoid him. Well, punitive damages aren't compensatory, right? It doesn't matter. Punitive damages, you said you were damaged by $40,000. Right, there to punish. That was what you claimed were your damages. Punitive damages are, by definition, over and above your damages. They are, and that's exactly what the court found, and when you talk about willful and malicious, he continued in his answer to our complaint to allege that those facts were true, that the son was a sex offender and a thief. It's just, it's over the top what this father did, and basically, he ruined his son's life. His son used to work for him, knew all these people. This sign is posted on Schuyler Avenue, which is the main thoroughfare through the town, and everybody saw that sign. And basically, on the stand, my client explained he couldn't even go out anymore. People would ask him, is it true, and of course it wasn't true, and that came out during the trial. He's talking about some act he made up with a dog that occurred 20 years ago. I mean, it's incredible that he would say that. Well, I get all that, but whether punitive damages, whether those damages would have been appropriate had they been pled, I think the issue that's raised here is can the judge award punitive damages even if the facts would have supported them if they were never pled? Well, I would say my answer is yes, but even if they weren't pled, his damages are at least $40,000 without the punitive damages. When you say in your cross appeal that the damages should have been $40,000 and not $16,000, I mean, my understanding of that, my reading of that was that there were additional compensatory damages. But since you include the $16,000 as part of the damage award, it's unclear. So I'm not sure what you're asking us to do with that. Oh, what I'm saying is the judge ruled specifically it was a per se libel, all right? And I think everybody can agree with that. It's just I can't think of anything more incredible for a father to do to his son. So I think it's clear it's a per se libel. And what I'm saying is Mr. Hyatt is saying, well, we still have to prove our damages. You have to show me bills for going to a psychologist or bills for your other damages, if you would. And basically per se in this situation does away with that. We didn't have to go into that. And I think the judge is absolutely wrong in saying that I'm going to only award you $1,000 and then I'm going to give you $15,000 impunitive. Is that because she found in her room that specials weren't proved? Yeah, exactly. Yeah, what I'm saying is I don't know that we had to prove specials. I don't think we had to prove specials. But I think even if that's her ruling, I think it's very understandable that my client suffered at least that. I mean, he lives on and we didn't go into him. Mr. Hyatt just explained to the court that my client's on disability, all right? So we know what his facts were. The father, we find out, is accusing my client and subsequently of taking $500,000 in cash from his safe. The father is a multimillionaire. So obviously the court had in front of it a disabled person versus a multimillionaire. Those are the facts and that's what the case was about. So we had the evidence of the financial status of the defendant. Mr. Hyatt talks about the exceptional nature of punitive damages. I honestly cannot think of a more fitting scenario to award punitive damages in. I mean, what he did was exceptional. I mean, he put a sign up. Following up on that, you amended your complaint. Why didn't you see fit at that time because of these extreme circumstances to request punitive damages? Well, you know, when we amended the complaint, we amended under 2617, we amended our remedies, okay? I mean, we didn't ask for, well, I guess you're right. You're right. We could have done that and apparently we did, but we did not. Are you conceding, I'm just listening to your argument here and trying to figure out what your position is. Are you conceding that punitive damages were not requested and should not have been awarded, but asking us to increase the compensatory damages to 40? I think you should increase his damages to 40. I further think that you could increase the punitive damages significantly. And I think the court had the power to do what it did. The court is not limited. Can you cite any case where the trial court allowed punitive damages that were never asked for? The only case I did cite, Your Honor, was that Timothy Wheeling case, 947 Northeastern 2nd, 366, and that's a takeoff on that Civil Practice Act, 5-2-604, where the prayer for relief does not limit the relief obtainable. Can you just try to answer my question? Are you conceding you didn't request punitive damages? I am conceding that. Okay. Then that helps me understand your argument. But your position is the judge was within her discretion and authority to impose punitive in spite of the lack of relief. That is true. That helps me think. Mr. Hyatt talks about we should have had discovery on his ability of his client to pay and on the disability of my client. There was no discovery denied. I mean, he could have gotten all the discovery he wanted. And just ending this section, when you talk about malicious, he had an affirmative defense in there that everything in the signing was true. That's malicious. Mr. Hyatt claims that it's impossible. The second issue, the deeds, you know, basically we asked to amend the remedies. The argument is it's impossible for this court to review or reverse the trial court. Basically, we've proven forgery. I mean, all the elements are there. The remedy, what we did is we changed the remedy because, indeed, their answer and later during the trial, they stipulated that the only thing on this piece of paper was my client's signature that he obtained one night when he broke in with a gun. And the court said, oh, I'm not going to believe the gun. Well, okay, don't believe the gun, but it's still a forgery. They admit filling out these documents. They admit that my client wasn't present when they were notarized. I mean, the fact that it's a forgery is admitted. There's nothing missing there but the remedy. So I would find it hard to believe if you didn't reverse on that point. He talks about the court not believing the gun allegations. Well, okay, don't believe the gun allegations. That's my client's word against the father, but all the rest of the remedies are totally believable, and that's what we're asking this court to reverse on. This judge, 2-617, says she should, she shall allow us to amend, she didn't. That's not all it says. It says on terms that are just and reasonable. I agree. And the judge says she didn't believe the allegations of the amendments you want to make. Let's go into that. I'm glad you raised that, sir. You have, they admitted, I think it's paragraph in the second count, they admitted that all there was was the signed blank deeds. They filled them out. They named who the beneficiary of it was. That was all they're doing. That's nothing my client did. These were forgeries at that point in time. Wait a minute, they forged your client's signature? The only thing that wasn't on the page was his signature. Every other item on there was a forgery. Well, that's the body of the document. You don't, a forgery is when you write something that purports to be somebody else's writing, usually a signature. Well, usually, but here if you have, basically you had a quick claim deed. The only signature on there was my client's. The only writing on there was my client's. The description of the property, who was going to take the property, all of that, the notarization, all of that was a forgery. And they complied 100% with the forgery statute. So it's like, Judge, if you were to sign your name to a piece of paper and I made that piece of paper a deed, that's exactly what they did. And they filed it. So when your client signed it, it didn't say quick claim deed at the top? I think it did. I think it did. But did we know who it was going to be, where it was going? Well, you're probably pretty sure it wasn't quick claim deed to yourself. Well, I think we need quite a bit more to convey property than what they had. I mean, they admit that they completed those documents. And they didn't complete them the way my client wanted them completed. It was the way they wanted it done. He wasn't asked any of that. These were forgeries. And then the remarkable thing is the judge in her argument for not allowing this, she says that the plaintiff knew in advance that the defendant's, well, we knew in advance, if you would, and we should have argued it as one of our accounts, that it was a forgery. Well, we didn't know that. We couldn't have argued that until they came back and admitted the facts of our complaint, that all they got from my client was his signature on a piece of paper. And then they filled it all in. That was the completed forgery. We couldn't argue that in advance. But we certainly did argue it. And we did it timely. Under 217, 20 days prior to the court's ruling, we asked to amend the remedies. And we were disallowed. And prior to that even, very early on in the case, we asked to amend under 2618, which is discretionary with the court. And she allowed us the right to do it for all the damages that they caused to his mobile home when they took all the money he had spent on the mobile home. She had allowed us to do that. And then when we did it, she disallowed it. Thank you. Just to be clear, what counsel is referring to, there was a motion made during the trial, not at the end. There was a motion made during the trial by the plaintiff to add a count for damages to the mobile home. And at first the judge said, fine, that's permissible. She didn't realize that they were adding a new count that had nothing to do with the original count too. And when she did, she said, no, of course you can't do that. I'll give a correct example of a motion to conform the pleadings to the proofs. At the close of the evidence, it's clear that evidence came in during the trial that of an additional amount of damages that is related to the wrong or the negligence or whatever the cause of action is, but an additional amount of damages that increases the amount claimed in the complaint. What a motion to conform the pleadings to the proofs under 617 doesn't, what 617 doesn't contemplate is what the plaintiff tried to do here, which was to add a laundry list of additional causes of action to his original complaints. That's just not permissible, and the trial court was correct in denying the request. But there was no mid-trial request to amend to ask for punitive damages? No. Punitive damages never came up until the court announced her decision. There was never an amendment sought by the plaintiff to add a request for punitive damages. During our original argument, the question came up, is the amount of compensatory damages challenged on appeal? In the cross-appellant's brief, there is a paragraph, it's not even a paragraph technically, it's two sentences long, but arguing that special or pecuniary damages need not be proven when a writing is found to label per se, and then it just cites the general law that if in a per se case damages are presumed. But it doesn't address the point that despite the presumption of damages, there still has to be a relationship between the evidence and the amount of the damages. And the trial court here made specific findings as to why she was assessing the compensatory award that she did. She found that the plaintiff was not credible. She found that the evidence that he provided as to the amount he should receive as compensatory damages was not very good. And for that reason, she awarded the amount of $1,000. That amount on appeal, if the court considers that the plaintiff is challenging that amount on appeal, and it really isn't addressed very much at all in the briefs, but to the extent that the court determines that that's at issue on appeal, that decision should not be disturbed. And for all the reasons I've argued, I'm asking that the punitive damages award be reversed or alternatively be remitted to $4,000. Thank you. And thank you both for your arguments there. I will take this matter under advisement. In fact, it was written to send it in a very short date. Well, now if it's short recess, we're going to adjourn. So he's allowed some? I'm so sorry. You have to remember what I just said because I'm not going to repeat it. Thank you, Judge. I keep hearing credibility. And that's the judge refused to follow 2617 on this argument of credibility. I don't find my client credible. She never gave a reason. She never gave a factual basis for this credibility argument she put forward. There is no credibility argument with my client. We proved absolutely the sign he put up. We proved on the deeds that they filled in the description of property. They named a grantee. They notarized my client's signature. He wasn't there. They altered and issued those deeds. I mean, that was the forgery. That's all a fact. We don't have to look at anybody's words. We have a sign and we have the documents. Where's the credibility issue? I mean, he's made his case without even having to talk, if you would. But he did. He did testify. The credibility issue plays with the father, why he's allowed to do these things, why he's allowed to put these signs up, why he's allowed to come in with an affirmative defense in his answer and say, yeah, it's all true. What I'm saying is credibility that they keep arguing is simply, for whatever reason this judge did not want to rule correctly, I believe, on 2617 or on the damages for the libel. So we have credibility. Somebody should explain to me where credibility comes in. You don't have to even get to credibility to reach a decision in this case. Thank you. Thank you. And now, as I said, we have a short recess. We're adjourned. Please rise. This court stands in recess.